UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| GERALD GALLANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 09-40142-FDS |
| CITY OF FITCHBURG; MICHAEL GALLANT, individually and in his capacity as Building Commissioner of the City of Fitchburg; LISA A. WONG, in her capacity as Mayor of the City of Fitchburg; JOANNE SOCZEK, in her capacity as Chairperson of the Board of Health of the City of Fitchburg; and JAY MOR ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is a civil rights action arising out of the demolition of a building located in Fitchburg, Massachusetts. Plaintiff Gerald Gallant owned a piece of commercial and residential property that was demolished upon an order of Fitchburg city officials. Gallant contends, in substance, that the demolition was improper and that he did not receive due process of law.

The complaint alleges five substantive causes of action against the City, certain of its officials, and the contractor that executed the demolition: (1) negligence (Count 1); (2) deprivation of substantive due process in violation of 42 U.S.C. § 1983 (Count 2); (3) deprivation of procedural due process, also in violation of § 1983 (Count 3); (4) violation of Mass. Gen. Laws ch. 143 (Count 4); and (5) trespass (Count 5). Count 6 seeks a declaratory judgment that the demolition was unlawful. The City and its officials have moved to dismiss Counts 1 through 4

and 6, the only counts naming them as defendants, for failure to state a claim. For the reasons that follow, the motion will be denied.

I.     **Background**

   A.     **Statutory Background**

At the outset, a brief outline of the relevant statutory scheme under Mass. Gen. Laws ch. 143 is necessary.

Section 6 of Chapter 143 requires a local building commissioner to inspect a building once he is informed that it "is dangerous to life or limb or that [it] is unused, uninhabited or abandoned, and open to the weather." Mass. Gen. Laws ch. 143, § 6. This requirement is echoed in the state building code. *See* 780 C.M.R. 121.1 & 121.2. Section 6 further requires that the inspector, in writing, "notify the owner, lessee or mortgagee in possession to remove it or make it safe if it appears to him to be dangerous, or to make it secure if it is unused, uninhabited or abandoned and open to the weather." Mass. Gen. Laws ch. 143, § 6. The owner must make the building safe or secure pursuant to the requirements of 780 C.M.R. 121.7.[1]

---

[1] The owner must make the building safe and secure by:

> 1. Removing all materials determined by the head of the fire department or building official to be dangerous in case of fire.
>
> 2. Securing all floors accessible from grade utilizing one of the following methods so long as such method is approved by the head of the fire department and by the building official and confirmed by the issuance of a permit:
>
>> (a) Secure all window and door openings in accordance with the U.S. Fire Administration, National Arson Prevention Initiative Board Up Procedures, continuously until such time as the building is reoccupied; or
>>
>> (b) Provide 24 hour watchman services, continuously until such time as the building is reoccupied; or
>>
>> (c) Provide a monitored intruder alarm system at the perimeter of all floors accessible from grade, continuously until such time as the building is reoccupied.

Section 7 provides that "[a]ny person . . . notified [pursuant to Section 6] shall be allowed until twelve o'clock noon of the day following the service of the notice in which to begin to remove such structure or make it safe, or to make it secure, and he shall employ sufficient labor speedily to make it safe or remove it or to make it secure." Mass. Gen. Laws ch. 143, § 7; *see* 780 C.M.R. 121.3.  To comply with Section 7, the owner must then notify the building commissioner of the method used to make the building safe and secure.  780 C.M.R. 121.7.

If an owner refuses or neglects to comply with Section 7, Section 8 requires that "a careful survey of the premises shall be made by a board consisting in a city of the city engineer, the head of the fire department, . . . and one disinterested person." Mass. Gen. Laws ch. 143, § 8; *see* 780 C.M.R. 121.4.  After the survey is made, "[a] written report of such survey shall be made, and a copy thereof served" on the owner.  Mass. Gen. Laws ch. 143, § 8.  Under Section 9, if the survey report "declares such structure to be dangerous or to be unused, uninhabited or abandoned, and open to the weather," and if the owner fails to make the building safe and secure, the building commissioner "shall cause it to be made safe or taken down or to be made secure." *Id.* § 9; *see* 780 C.M.R. 121.5.

Section 10 provides a remedy for a property owner aggrieved by an order to remove a dangerous structure or to make it safe.  Mass Gen. L. ch. 143, § 10.  A property owner is afforded three days after service of such an order to commence an action in Massachusetts Superior Court.  *Id.* (authorizing an aggrieved owned to initiate a civil action under Mass. Gen. Laws ch. 139, § 2); *see* 780 C.M.R. 121.6.  The property owner is afforded a jury trial for the purpose of affirming, annulling, or altering the order at issue.  Mass. Gen. Laws ch. 139, § 2.  The

---

780 C.M.R. 121.7.

Superior Court must thereafter render judgment in conformity with the jury's verdict, which takes effect as an original order. *Id.* All such actions have priority over other cases on the Superior Court docket. *Id.*

On its face, Section 10 provides only a post-deprivation remedy; the filing of a civil action does not automatically stay a demolition. Mass. Gen. Laws ch. 143, § 10 (providing that Mass. Gen. Laws ch. 139, § 2, "shall [not] be construed so as to hinder, delay or prevent the [building commissioner] acting and proceeding [with a demolition] under section nine"). There is no provision in the statute for preliminary injunctive relief or for any administrative appeal. However, if the jury annuls the order before the demolition takes place, the building commissioner would lack the power to proceed, and the owner would have obtained a pre-deprivation remedy.

### B.     **Factual Background**

Against that backdrop, the complaint contains the following factual allegations, which are assumed to be true for purposes of this motion.

Since October 24, 2002, plaintiff Gerald Gallant has owned real estate located at 319-321 Water Street, Fitchburg, Massachusetts. (Compl. ¶ 12).[2] Prior to his purchase of the property, the City had complained of alleged health and sanitary violations on multiple occasions. (*Id.* ¶ 13-14). When he acquired the property, plaintiff removed all the debris and the City had no further complaints until the events giving rise to his action. (*Id.* ¶ 16-17).

---

[2] Plaintiff filed his complaint on August 18, 2009. On February 23, 2010, after briefing on the motion to dismiss was complete, plaintiff filed an amended complaint. The amended complaint, however, does not comply with Federal Rule of Civil Procedure 15(a). Plaintiff was not authorized to file an amended complaint as a matter of course under Rule 15(a)(1), and neither obtained written consent from all defendants nor sought and received leave of the Court as required by Rule 15(a)(2). Accordingly, the Court will treat the original complaint as the operative pleading for purposes of the present motion.

In December 2005, the then-mayor of Fitchburg decided that plaintiff's property should be demolished, and a December 7 memo to the City Building Commissioner, Michael Gallant, instructed him to begin the demolition process. (*Id.* ¶ 19-20).[3] On December 13, Commissioner Gallant sent plaintiff a letter indicating that the building was "vacant, unused aband [sic] unoccupied and is detrimental to the area and it is dangerous to life and limb." (*Id.* ¶ 22). Commissioner Gallant ordered plaintiff to make the building safe or have it demolished, and gave him seven days within which to apply for a building permit. (*Id.* ¶ 24-25).[4] Although the letter was allegedly sent by certified mail, plaintiff did not receive a copy. (*Id.* ¶ 26-27).

On December 14, 2005, before the seven-day period had expired, Commissioner Gallant ordered Fire Chief Kevin Roy to undertake an inspection of the property in anticipation of the demolition. (*Id.* ¶ 30). On December 28, 2005, a three-person board undertook the survey. It issued its report to Commissioner Gallant on January 6, 2006. (*Id.* ¶ 32, 34). Also on December 28, Commissioner Gallant sent plaintiff another copy of his December 13 letter. (*Id.* ¶ 35). Plaintiff received that letter on January 6. (*Id.* ¶ 37).

Upon receipt of the December 28 letter, plaintiff immediately boarded up the building, including the windows, and secured the premises with an eight-foot fence with barbed wire at the top. (*Id.* ¶ 41). He also hired a contractor to put a new roof on the building at a cost of $10,500. (*Id.* ¶ 42). Plaintiff then sought review of his work to ensure that he was now in compliance with the City's requirements. (*Id.* ¶ 43). In a later conversation, Commissioner Gallant ordered

---

[3] Michael Gallant is not related to plaintiff Gerald Gallant.

[4] The seven-day time limit given by the Commissioner does not appear to be co-extensive with the period provided in Mass. Gen. Laws ch. 143, § 7, which requires only that work begin (but apparently not be complete) by "twelve o'clock noon of the day following the service of the notice." Section 7, however, does require that the owner use sufficient labor to "speedily" make the building safe and secure. *Id.*

plaintiff to take the further step of boarding the windows "California style." (*Id.* ¶ 44). Although the phrase "California style" does not appear in the building code, plaintiff complied with that demand as well. (*Id.* ¶ 46). Plaintiff applied for a building permit on June 12, which Commissioner Gallant approved on June 16. (*Id.* ¶ 47-49). Shortly thereafter, the work was completed and approved by a City inspector. (*Id.* ¶ 52-54).

On the same day Commissioner Gallant issued the building permit (June 16), he sent plaintiff a "FINAL NOTICE BEFORE DEMOLITION." Plaintiff received it on June 27, well after he had obtained a building permit, completed repairs, and had the building inspected and approved. (*Id.* ¶ 55-56).[5] The notice stated that if plaintiff did not apply to demolish the building within 72 hours of receipt, the City "may demolish the building in the immediate future and without notice." (*Id.* ¶ 64). It also specifically informed plaintiff of the remedy provided by Mass. Gen. Laws ch. 143, § 10. (Doc. 1-9, at 2).[6]

On June 27, the same day plaintiff received the final notice, Commissioner Gallant contacted the City's Planning Coordinator, David Streb, and designated him as the agent in charge of securing the demolition of plaintiff's property. (Compl. ¶ 67). On July 20, Commissioner Gallant issued a "NOTICE OF PENDING DEMOLITION," stating the City's intention to demolish plaintiff's property for his failure to comply with or respond to an order issued pursuant to Mass. Gen. Laws ch. 143, § 9. (*Id.* ¶ 73). This notice was neither mailed to

---

[5] Although the notice was purportedly issued pursuant to Mass. Gen. Laws ch. 143, § 9, plaintiff contends that reliance on that section was misplaced because, by this point, he had complied with the City's demands to make the building safe. (*Id.* ¶ 58-62).

[6] In plaintiff's view, the notice was ineffective because Commissioner Gallant had just approved his permit, inspected the work, and allowed him to incur substantial expenses of boarding the windows "California style." (*Id.* ¶ 65).

nor served upon plaintiff, and he did not become aware of it until after his building was demolished. (*Id.* ¶ 74-75).

Sometime in November 2006, plaintiff and Commissioner Gallant met at the Building Commissioner's office. (*Id.* ¶ 79). At that meeting, plaintiff gave Commissioner Gallant a copy of the invoice for the new roof he had previously installed at the building. (*Id.* ¶ 81). Coupled with the inspector's approval of the boarded windows, plaintiff believed his building was in compliance with the City's demands. (*Id.* ¶ 82). At no point during the meeting did Commissioner Gallant give plaintiff a copy of the "notice of pending demolition" or tell him that a demolition was imminent. (*Id.* ¶ 80).

Sometime in December 2006 or January 2007, the City demolished plaintiff's property. (*Id.* ¶ 83). The demolition was performed by defendant Jay Mor Enterprises, Inc. (*Id.* ¶ 84). Plaintiff alleges that the demolished building was worth approximately $300,000, and that the City has now demanded that plaintiff reimburse it $59,143 for cost of the demolition. (*Id.* ¶ 86-87).

On August 18, 2009, plaintiff filed a six-count complaint in this Court. Count 1 alleges negligence on the part of the City and Jay Mor; Count 2 alleges denial of substantive due process by the City, Commissioner Gallant, Lisa A. Wong (the City's Mayor), and Joanne Soczek (the Chairperson of the City's Board of Health); Count 3 alleges deprivation of procedural due process by the City, Commissioner Gallant, Wong, and Soczek; Count 4 alleges a violation of Mass. Gen. Laws ch. 143 by the City, Commissioner Gallant, Wong, and Soczek; Count 5 alleges trespass by Jay Mor; and Count 6 seeks declaratory judgment that the demolition was unlawful and that the

assessment of demolition charges against plaintiff is without justification.[7]

The City and its officials have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts against them for failure to state a claim upon which relief can be granted.

## II. Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Analysis

### A. Statute of Limitations

Defendants first argue that the complaint is barred by the three-year limitations period

---

[7] Gallant is sued in both his individual and official capacities, while Wong and Soczek are sued only in their official capacities.

contained in Mass. Gen. Laws ch. 260, § 2A.  They contend that the complaint is untimely because it was filed on August 18, 2009,  more than three years after plaintiff first received notice of the impending demolition (on January 6, 2006).  That argument is patently without merit.  A cause of action does not accrue, at the earliest, until a plaintiff has suffered an injury.  *See Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir. 1991).  In this case, that injury did not occur until plaintiff's property was demolished, which occurred no earlier than December 2006.  Because the complaint was filed within three years of the date of the injury, it is timely.

### B. The § 1983 Claims (Counts 2 and 3)

Defendants next seek dismissal of the § 1983 due process claims.  They contend (1) that Counts 2 and 3 both fail because the complaint alleges only negligent conduct, which is not cognizable under § 1983; (2) that the procedural due process count fails because plaintiff cannot show that his post-deprivation remedies were inadequate; and (3) that the substantive due process count fails because plaintiff has not pleaded sufficient facts to show that defendants' conduct "shocks the conscience."  The Court will address each argument in turn.

### A. Negligence (Counts 2 and 3)

Defendants first contend that both § 1983 counts must be dismissed because plaintiff has alleged only negligent conduct, and that conduct that is merely negligent cannot violate the Constitution.  *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment).  Defendants misread the complaint.  Plaintiff has specifically alleged that defendants resolved "to carry out the plan [to demolish the property] either intentionally or with

9

reckless indifference to the applicable laws." (Compl. ¶ 90). That allegation is plainly sufficient to allege intentional conduct within the meaning of § 1983.

### B. Procedural Due Process Claim (Count 3)

Count 3 alleges that defendants deprived plaintiff of procedural due process. Defendants contend that the procedural due process count necessarily fails because plaintiff cannot show that his post-deprivation remedies were inadequate. Plaintiff's response is two-fold. First, he contends that defendants denied him due process because they violated state law. In particular, he argues that defendants were not authorized by law to demolish his property once he had abated the unsafe conditions. According to plaintiff, if defendants still considered the building unsafe or unsecured, state law entitled him to new notice and an opportunity to be heard, and that the "final notice before demolition" issued on June 16 was therefore premature. Second, and in any event, he argues that the process he was afforded pursuant to Mass. Gen. Laws ch. 143 was constitutionally inadequate.

In order to establish a procedural due process claim under § 1983, plaintiff must allege that he has a property interest as defined by state law and that the defendants, acting under color of state law, deprived him of that interest without constitutionally adequate process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). For the purposes of this motion, the parties assume that plaintiff had a property interest in the demolished building and that defendants acted under color of state law.

To the extent that plaintiff contends that a mere violation of state procedural law constitutes a denial of procedural due process, that claim is without merit. Courts have long held that "[a] breach of procedural requirements does not create a due process violation unless an

individual was 'denied a fair forum for protecting his state rights.'" *McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) (quoting *Atencio v. Board of Educ.*, 658 F.2d 774, 779-80 (10th Cir. 1981) and citing cases). "To hold otherwise would convert every departure from established administrative procedures into a violation of the Fourteenth Amendment, cognizable under § 1983." *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir. 1991). The question, rather, is whether plaintiff was provided with a "fair forum for protecting his state rights." *See McDarby*, 907 F.2d at 1337; *see also PFZ Properties*, 928 F.2d at 31 (where defendants violated state law by failing to give pre-deprivation process, "the only question is whether the post-deprivation process available to [plaintiff] was adequate").

Plaintiff's alternate claim may not be so readily dismissed. At this juncture, the Court is unwilling to conclude, as a matter of law, that the process afforded to plaintiff was fair. "Without question, procedural due process requires notice and an opportunity to be heard before a private building may be condemned as a nuisance and demolished." *Nikolas v. City of Omaha*, 605 F.3d 539, 547 (8th Cir. 2010) (citing *Hroch v. City of Omaha*, 4 F.3d 693, 695 (8th Cir. 1993)); *see Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994) ("Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing."). Here, even if the Court assumes that defendants provided plaintiff with adequate notice, it is not clear that plaintiff had a fair opportunity to be heard *before* his property was demolished.[8] Upon receipt of the June 16 "final notice before demolition," plaintiff had three days within which to file a civil action in the Superior

---

[8] Plaintiff, of course, does not concede that he received effective notice. The Court does not need to resolve this argument in order to resolve the motion to dismiss.

11

Court to challenge the order. Mass. Gen. Laws ch. 143, § 10; Mass. Gen. Laws ch. 139, § 2. Section 10, however, makes clear that the filing of such an action "shall [not] be construed so as to hinder, delay or prevent the [building commissioner from] acting and proceeding [with a demolition] under section 9." Mass. Gen. Laws ch. 143, § 10. In other words, the filing of a civil action (the only remedy apparently provided in the statute) does not operate to stay the impending demolition. *See id.* Although such an action has priority on the Superior Court docket, *see* Mass. Gen. Laws ch. 139, § 2, there is obviously no guarantee, and perhaps little likelihood, that under normal circumstances the case would be heard by a jury before the property is demolished.[9] The statutory procedures may, therefore – at least under some circumstances – be constitutionally inadequate.

There are, to be sure, a multitude of issues, factual and otherwise, that may need to be resolved before this claim can be decided. For example, according to the complaint, plaintiff received the "final notice before demolition" on June 27, 2006, but his property was not demolished until December 2006 or January 2007. It is unclear what, if anything, happened in the interim. It is also unclear why plaintiff did not try to avail himself of his rights under Section 10,

---

[9] Defendants do not contend that this is a situation in which an emergency necessitated immediate demolition of the property, in which case a pre-deprivation hearing might not be required. *See Diede v. City of McKeesport*, 654 F.Supp.2d 363, 374 (W.D. Pa. 2009) (holding that city did not violate due process by razing barn without a pre-deprivation hearing because emergency justified immediate action (citing *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008))). As the Supreme Court has explained in the takings context:

> In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. . . . Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.

*Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

and whether his failure to do so precludes his challenge here. *Compare Diede v. City of McKeesport*, 654 F. Supp. 2d 363, 374 (W.D. Pa. 2009) (holding that because "[p]laintiffs did not avail themselves of [the available post-deprivation] procedures after the razing of the barn [they] may not now claim a constitutional violation" based on the inadequacy of those procedures). Nonetheless, at this stage, the constitutional adequacy of the due process afforded to plaintiff cannot be affirmed as a matter of law.

Finally, defendants' reliance on *Aubuchon v. Massachusetts*, 933 F. Supp. 90 (D. Mass. 1996), is misplaced. In that case, the court dismissed a procedural due process claim arising from the demolition of commercial property because the plaintiff had adequate pre- and post-deprivation remedies. *Id.* at 92-93. As to the former, at the time of that decision, Massachusetts provided an adequate pre-deprivation opportunity to be heard because the owner was entitled to (and did) file an appeal of the demolition order to the Building Code Board of Appeals, which resulted in an automatic stay of the demolition. *Id.* at 91. As to the latter, the plaintiff was authorized (as in this case) to file a civil action under Mass. Gen. Laws ch. 143, § 10. *Id.* at 92. *Aubuchon* does not control here because, as defendants acknowledge, the pre-deprivation remedy available at that time no longer exists. Moreover, because plaintiff's constitutional claim relies on more than an alleged violation of state law, he is not limited to disputing the adequacy of post-deprivation remedies. *Cf. Bourne v. Town of Madison*, 494 F. Supp. 2d 80, 89 (D.N.H. 2007) ("Thus, in a case such as this, where the plaintiff's constitutional claim relies on an alleged violation of state law, the only question is whether the post-deprivation process available to the plaintiff was adequate." (quotation and alteration omitted)).

Accordingly, defendants have not demonstrated that plaintiff's procedural due process claim fails to state a claim upon which relief can be granted.

### 3. Substantive Due Process Claim (Count 2)

Count 2 alleges that defendants deprived plaintiff of substantive due process. Defendants contend that plaintiff has failed to allege sufficient facts to show that they engaged in conduct that "shocks the conscience" within the meaning of the relevant case law.

"[S]ubstantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'" *PFZ Properties*, 928 F.2d at 31-32. The standard is a high one to meet, particularly in the land use context. *See id.*; *see also Bourne*, 494 F. Supp. 2d at 89 ("Meritorious substantive due process claims in the context of a land use dispute are rare."). Indeed, even "where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *Id.* at 31.

Even so, the Court cannot conclude, at this stage, that plaintiff has failed to make out a claim for relief as a matter of law. According to the complaint, defendants proceeded with the demolition of plaintiff's property even though they had full knowledge that he had taken costly steps to make the building safe. Plaintiff alleges that Commissioner Gallant personally instructed him to board the windows and then signed off on a building permit for plaintiff and his contractor to enter the premises and perform the work – yet, on the very same day, the Commissioner sent plaintiff a "final notice before demolition." Plaintiff further alleges that when he completed the repairs, the work was inspected by a city official, who approved the changes; plaintiff then met

personally with Commissioner Gallant and provided him with proof that a new roof had been installed. Defendants nonetheless demolished plaintiff's property without giving him a hearing. Such conduct, if proved, might arguably be deemed to "shock the conscience." *See Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) ("There is no scientifically precise formula for determining whether executive action is – or is not – sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment."). At a minimum, resolution of the issue must await further development of the record. The motion to dismiss the substantive due process claim will therefore be denied.

        **C.**      **Declaratory Judgment Claim (Count 6)**

Defendants next contend that the Court should dismiss the declaratory judgment count. Although this Court has discretion whether to entertain a claim for declaratory relief, *see* 28 U.S.C. § 2201 (providing that a court "may declare the rights and other legal relations of any interested party seeking such declaration"), defendants have failed to offer a convincing reason at this stage that the Court should not exercise that discretion. Defendants argue that (1) Massachusetts courts can more effectively resolve plaintiff's claims, and (2) because plaintiff did not exhaust his remedies under Mass. Gen. Laws ch. 143, § 10, he should not be permitted to seek a declaration that defendants violated Chapter 143 or deprived him of due process. The first contention is without merit, as federal courts have long entertained due process claims arising out of state administrative procedures. As to the second, the legal effect of plaintiff's failure to file a lawsuit in Superior Court is still at issue, and therefore does not supply a reason, at this stage, for dismissing the declaratory judgment count.


### D. State Law Claims (Counts 1 and 4)

Finally, defendants contend that the Court may decline to exercise supplemental jurisdiction over plaintiff's state law claims (Counts 1 and 4) where all other claims over which the Court has original jurisdiction have been dismissed. *See* 28 U.S.C. § 1367(c)(3). For the reasons described above, the Court has decided not to dismiss Counts 2, 3, and 6. It would therefore be improper to dismiss Counts 1 and 4.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: August 13, 2010